**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-22253-CIV-HUCK/BANDSTRA**

UNITED STATES OF AMERICA, *ex rel.*,
MARC OSHEROFF, *et al.*,

    Plaintiff-Relator,

v.

TENET HEALTHCARE
CORPORATION, *et al.*,

    Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED COMPLAINT**

This matter is before the Court on Defendant Tenet Healthcare Corporation's ("Tenet") and its subsidiaries' (as listed in the First Amended Complaint) (collectively, "Defendants") Motion to Dismiss the First Amended Complaint (D.E. #41) of Qui Tam Plaintiff and Relator Marc Osheroff ("Relator" or "Plaintiff"). Defendants assert two grounds: lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) by virtue of the Public Disclosure Bar of the False Claims Act ("FCA") and failure to state a claim upon which relief can be granted and failure to plead the elements of the FCA with sufficient particularity under Fed. R. Civ. P. 12(b)(6) and 9(b) (the "Motion to Dismiss") (D.E. #67). The United States and the States of Florida, California, Tennessee, and Texas have declined to intervene in this action. *See* D.E. #37 and 39. Since Relator has filed a response (D.E. #75) and Defendants have filed a reply (D.E. #77), this Motion to Dismiss is ripe for adjudication.[1]  For the reasons stated below, Defendants' Motion to Dismiss

---

[1] Although the United States has not intervened in this case and is not a formal party, it filed two Statement of Interests (D.E. #83 and #94) in support of Relator's position. At the hearing held in this Court on June 25, 2012, the Court ordered Defendants to file a Notice Regarding Certifications and Response to the United States' Statement of Interest. Defendants filed this document on June 27, 2012, and a supplement to the Notice Regarding Certifications on July 10, 2012. *See* D.E. #87 and 93. Relator filed a reply to to Defendants' initial Notice and Response on July 10, 2012. *See* D.E. #92.

1

is DENIED with respect to lack of subject matter jurisdiction and GRANTED with leave to amend with respect to failure to state a claim upon which relief can be granted and failure to plead the elements of the FCA with sufficient particularity.

**A. Background**

The instant case is a qui tam action brought by Relator, owner of a full-service real estate company, on behalf of himself and the United States of America and the States of Florida, Georgia, Texas, Tennessee, and California. Defendants comprise Tenet, a nationwide healthcare company, and its subsidiaries through which Tenet owns or leases medical office buildings and hospitals. Defendants argue that this Court lacks subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) because Relator's qui tam action is based on information publicly disclosed from the "news media" and Relator is not an original source of the information. Defendants also argue under Fed. R. Civ. P. 12(b)(6) and 9(b) that Relator's Amended Complaint (D.E. #41) does not plead facts supporting the elements of Relator's FCA claim with sufficient particularity and otherwise fails to state a claim upon which relief can be granted.

Relator's allegations are summarized as follows. Tenet's hospitals take patient referrals from physicians who lease space from Defendants. *See* Am. Comp., D.E. #41, ¶138. Pursuant to such referrals, Tenet has submitted, and continues to submit, numerous claims for payment to Medicare, Medicaid, and other federal healthcare programs. *See id.* The Tenet-physician leases are offered to the referral physicians at below-market rental rates and include other compensating perks, creating a "financial relationship" between Defendants and each physician for purposes of the Stark Law, 42 U.S.C. §§ 1395nn, 1396b(s) ("Stark").[2]  *See id.* at ¶139.  *See also* ¶¶70-137 (detailing allegations of below market rental rates in two substantially similar buildings, understating the size of the premises, charging higher rental rates to non-referral tenants, providing excessive tenant

---

[2] The Stark law generally prohibits a physician from referring Medicare and Medicaid patients for designated health services to an entity in which the physician has a nonexempt financial interest. 42 U.S.C. §§ 1395nn(a)(1) and 1396b(s). The goal of Stark is "to curb overutilization of services by physicians who could profit by referring patients to facilities in which they have a financial interest." *See* Jo-Ellyn Sakowitz Klein, *The Stark Laws: Conquering Physician Conflicts of Interest?*, 87 GEO. L.J. 499, 511 (1998).

improvement allowances to referral physicians and Tenet not seeking a market return or operating their medical office buildings as a business). Tenet is thus prohibited by Stark from submitting claims arising out of the referrals to Medicare and Medicaid for designated health services and claims submitted based on such referrals constitute false claims under the FCA. *See id.* at ¶140. Relator also alleges that the below-market rental rates and other perks granted to the physicians violate the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b)(2) ("AKS"), in that they are granted for the purpose of inducing or rewarding physician referrals of items and services to be paid for by Federal and State healthcare programs.[3] *See id.* at ¶141. Relator thus alleges that the claims submitted on the basis of such referrals constitute false claims under the FCA, violating sub-sections 3729(a)(1)(A)-(C) of the FCA. *See* 31 U.S.C. § 3729(a)(1)(A)-(C).[4]

The Court will analyze the two issues presented in turn. First, whether the Public Disclosure Bar of the FCA divests the Court of subject matter jurisdiction. Second, whether Relator has failed to state a claim upon which relief can be granted.

### B. Legal Analysis

    a. <u>Subject Matter Jurisdiction under the Public Disclosure Bar of the FCA</u>

Tenet allegedly owns or leases over seventy medical office buildings near its various hospitals. *See* Am. Compl., D.E. #41, ¶18. According to the Declaration of Guy

---

[3] The Anti-Kickback Statute makes it a felony to offer kickbacks or other payments in exchange for referring patients "for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program." 42 U.S.C. § 1320a-7b(b)(2)(A).

[4] In addition, Relator claims that Defendants violated the state false claims acts of Florida, Georgia, Texas, Tennessee, and California, which are similar to the federal FCA. Defendants' Motion to Dismiss, however, focuses exclusively on the federal claims. Defendants cite authority, that Relator does not challenge, for the proposition that a relator who fails to state a claim under the federal FCA necessarily fails to state a claim under the related state statutes. *See Cade v. Progressive Cmty. Healthcare, Inc.*, 2011 U.S. Dist. LEXIS 76085, at *9-10 (N.D. Ga. July 14, 2011); *United States ex rel. Lane v. Murfreesboro Dermatology Clinic, PLC.*, 2010 U.S. Dist. LEXIS 46847, at *8, 12 n.1 (E.D. Tenn. May 12, 2010); *United States ex rel. Foster v. Bristol-Myers Squibb Co.*, 587 F. Supp. 2d 805, 827-28 (E.D. Tex. 2008); *United States ex rel. Heater v. Holy Cross Hosp., Inc.*, 510 F. Supp. 2d 1027, 1034 n.4 (S.D. Fla. 2007); *United States ex rel. O'Connell v. Chapman Univ.*, 2007 U.S. Dist. LEXIS 98166, at *25 (C.D. Cal. Oct. 23, 2007).

Ponticiello, an employee of Jones Lang Lasalle ("JLL"), the real estate firm that was marketing the sale of 34 of Defendants' medical office buildings, JLL sent an advertisement for those buildings in a blast email to approximately 3,300 potential interested parties on May 15, 2008. *See* D.E. #67-1, ¶2. The email invited recipients to view an informational website upon executing a confidentiality agreement. *See id.* at Ex. 1. *See also* Am. Compl. at ¶72. Execution of the confidentiality agreement was a condition to viewing the Investment Offering Memorandum. *See id.* Ponticiello also declared that those "who signed a confidentiality agreement [were] provided with a password that granted them unrestricted access to the website." *Id.* at ¶3. "Once the website was accessed, every document in the site was available for viewing and could be downloaded." *Id.* at ¶4. "The documents on the website included, among other things, site layouts, tenant lease agreements, fair market value support for leases, detailed rent rolls, stacking charts, floor plans, argus models, historical operating expenses, title commitments with recorded documents, surveys, environmental studies, property condition assessment reports, and planning and zoning compliance reports." *Id.* Relator was one of over one hundred fifty who accessed Defendants' website. *See* D.E. #77 at P. 2.

Defendants argue that the information on the website constituted information publicly disclosed from the news media and that, because it serves as the basis of Relator's complaint, the action should be dismissed under the FCA's Public Disclosure Bar. Defendants also argue that Relator is not an original source of the information.

The Eleventh Circuit determines whether the Public Disclosure Bar precludes subject matter jurisdiction for a FCA qui tam suit by applying the following three pronged test: first, have the allegations made by the plaintiff been publicly disclosed?; second, if so, is the disclosed information the basis of the plaintiff's suit?; and third, if yes, is the plaintiff an 'original source' of that information? *See Battle v. Bd. of Regents for Ga.*, 468 F.3d 755, 762 (11th Cir. 2006); *Cooper v. Blue Cross and Blue Shield of Fla., Inc.*, 19 F.3d 562, 565 n.4 (11th Cir. 1994). This test derives from the plain language of the statute, which denies the Court "jurisdiction over an action . . . based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accountability

4

Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source." 31 U.S.C. § 3730(e)(4).[5]

According to the FCA's plain language, the Public Disclosure Bar applies only to "an action *based upon* the public disclosure of *allegations or transactions* . . . (emphasis added)." 31 U.S.C. § 3730(e)(4)(A). Even if the Court assumes that the website information and the internet article are news media under the first prong of the *Battle* test, the Court finds, for the reasons stated below, that the action brought by Relator – which involves in depth allegations that Defendants are providing illegal perks and financial benefits to physicians in exchange for referral business – is not based upon any allegations or transactions appearing on the website or in the internet article. Rather, Relator's action is based upon an alleged fraud that was first discerned through Relator's synthesis and analysis of otherwise apparently innocuous, garden-variety real estate/financial information.

The second prong of the *Battle* test, which is based upon the language from the FCA, is whether "the disclosed information [is] the basis of the plaintiff's suit." *Battle*, 468 F.3d at 762; *Cooper*, 19 F.3d at 565 n.4. Defendants argue "[e]ven a cursory glance at the complaint reveals that the 'facts' on which Plaintiff bases his claims were found on the internet web site created by JLL." D.E. #67, p. 13. Defendant's argument is overly simplistic and unrealistic, however, because "facts" which are presented as innocuous financial data that do not on the surface suggest fraud cannot be equated with "allegations or transactions" that do. While some Eleventh Circuit cases have used the broad phrase "publicly disclosed information" as a loose substitute for the more narrow phrase "publicly disclosed allegations or transactions," a review of the case law shows no intent to bar relators from extrapolating fraud from seemingly innocuous information that is publicly disclosed. Rather, the bar is for actions based on existing allegations or

---

[5] The Patient Protection and Affordable Care Act of 2010 amended 31 U.S.C. § 3730(e)(4)(A) to bar a *qui tam* action when "substantially the same" allegations or transactions as alleged in the action or claim were publicly disclosed. The amended language, however, does not apply to suits filed prior to the effective date of the Act. *See Schindler Elevator Corporation v. United States*, 131 S.Ct. 1885, 1889 n.1 (2011). Since the present action was filed in 2009, which was prior to the execution of the Act, the Court applies the prior statutory language.

transactions of wrongdoing that have been publicly disclosed. *Cf. Cooper*, 19 F.3d at 567 (action would have been barred based on congressional hearings publicly disclosing the allegations of fraud but for the original source exception); *Battle*, 468 F.3d at 762-63 (action barred when based on results from state audits where Plaintiff does not refer to her own research or documentation);. *McElmurray v. Consol. Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1252 (11th Cir. Ga. 2007) (action barred when based on existing allegations from Georgia Environmental Protection Agency or through documents filed in other civil litigation).[6] The Eleventh Circuit, moreover, has held that the public disclosure of allegations that the defendant "actually engaged in wrongdoing" is necessary before invoking the public disclosure bar. *See Cooper*, 19 F.3d at 567. In *Cooper*, a report that did not allege actual wrongdoing was found not to be a prohibited basis whereas a hearing that *did* allege wrongdoing was. *Id.* Recently, two district courts in the Eleventh Circuit similarly found that a public disclosure does not trigger the jurisdictional bar unless the publicly disclosed document alleges that the defendant actually engaged in wrongdoing. *See U.S. ex rel. Compton v. Circle B Enterprises, Inc.*, 2010 WL 942293 at *4 (M.D. Ga. Mar. 11, 2010)**;** *U.S. ex rel. Saldivar v. Fresenius Medical Care Holdings, Inc.*, 10-CV-01614-AT at *15 (N.D. Ga. Mar. 26, 2012). While the U.S. Supreme Court has recognized that the phrase "allegations or transactions" has a "broad meaning," the parties provide no precedent and the Court has not independently found any suggesting that an action alleging a fraud that is hidden in plain sight should be barred simply because it is hidden in public disclosure. Logic and the plain meaning of the Public Disclosure Bar support the conclusion that to the extent a relator does the work to expose a fraud that would otherwise go undetected, Relator's suit cannot be said to be based on disclosed allegations or transactions. Here, while Relator's action is based on data disclosed by Defendants and its agent, it is not based on allegations or transactions

---

[6] Furthermore, actions may be precluded if "based in any part on publicly disclosed information." *McElmurray*, 501 F.3d at 1254; *Battle*, 468 F.3d at 761; *Cooper*, 19 F.3d 565 n.4. Without a showing that the allegations or transactions of wrongdoing are publicly disclosed, however, an action cannot be based in part on any such allegations or transactions. Here, neither the internet article nor the website information contained allegations or transactions of wrongdoing upon which part of the action could be based.

6

of fraud. Relator appears to have independently extrapolated allegations of fraud only after performing an extensive degree of synthesis and analysis.

Accordingly, regardless of whether the information on Defendants' website, as well as the information in the internet article, can be considered publicly disclosed from the news media, such information does not amount to "allegations or transactions" of actual wrongdoing. Since the Public Disclosure Bar does not prevent Relator's suit from going forward based on the second prong of the *Battle* test, it is not necessary to consider whether there is a public disclosure from the news media or whether Relator is an original source of information on which the action is based.[7]

b.  Failure to State a Claim Upon Which Relief Can Be Granted

Next, the Court considers whether the Relator has pled facts with sufficient particularity to state a claim under any of the subparagraphs of the FCA applicable to the instant case. Such subparagraphs impose liability on any person who:

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; or
> (C) conspires to commit a violation of [among others] subparagraph (A) [or] (B).

*See* 31 U.S.C. § 3729(a)(1)(A)-(C).  At the pleading stage, a complaint alleging violations of the FCA must satisfy two pleading requirements. *See generally U.S. ex rel. Matheny v. Medco Health Solutions, Inc.*, 2012 WL 555200, 2012, U.S. App. LEXIS 3508 (11th Cir. Feb. 12, 2012).  First, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting Fed.R.Civ.P. 8(a)(2)). A complaint cannot merely

---

[7] In light of Plaintiff's independent synthesis and analysis of Defendant's seemingly innocuous financial materials, it is highly probable that Plaintiff would also satisfy the "original source" analysis. *See, e.g.*, *U.S. ex rel. Yannacopolous v. General Dynamics*, 315 F. Supp. 2d 939, 954 (N.D. Ill. 2004) ("Even if relator based the second amended complaint on publicly disclosed material, the trier of fact could reasonably decide that he was an "original source" because he discovered and synthesized that information during an independent investigation.")

recite the elements of a cause of action but must contain factual allegations sufficient to raise the right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Second, the complaint must comply with Rule 9(b)'s heightened pleading standard, which requires a party to "state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b); *Clausen*, 290 F.3d at 1308–09 (holding Rule 9(b) applies to FCA claims). The purpose of Rule 9(b) is to "alert[ ] defendants to the precise misconduct with which they are charged and protect[ ] defendants against spurious charges...." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir.2001) (citation and internal quotation marks omitted).

The particularity requirement of Rule 9(b) is satisfied if the complaint alleges "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir.2009) (internal quotation marks omitted) (citing *Clausen*, 290 F.3d at 1310); *see also Ziemba*, 256 F.3d at 1202 (noting the pleading standards are satisfied if alleging precisely what statements were made in what documents, when, where and by whom, the content, the manner in which they misled the plaintiff, and what the defendants obtained as a consequence of the fraud). Nonetheless, "conditions of a person's mind may be alleged generally." *Id.* In reviewing a motion to dismiss, all well-pleaded facts in a complaint and all reasonable inferences drawn from those facts are taken as true. *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994).

Defendants, in their Motion to Dismiss, present four independent arguments as to why Relator fails to adequately plead the elements of an FCA claim under any of the above subparagraphs (*see* D.E. #67, P. 4): first, that Relator fails to identify an actionable "claim" (*see id.* at 9); second, that Relator has not sufficiently alleged how any claim was "false" (*see id.* at 12); third, that Relator does not adequately allege that Defendants "knowingly" presented a false claim (*see id.* at 19); finally, that Relator does not adequately allege a "conspiracy claim." *See id.* at 20. The Court will analyze each of Defendants' arguments in turn.

8

*i. Does Relator Sufficiently Allege any Actionable "Claims"?*

The first issue raised by the Defendants is whether Relator sufficiently alleges any actionable claim.[8]  A claim is defined by the FCA, in pertinent part, as:

> any request or demand, whether under a contract or otherwise, for money or property . . . that . . . is presented to an . . . agent of the United States.  31 U.S.C. § 3729(b)(2)(A).

Here, Defendants do not argue that Relator has failed to allege "claims." Rather, Defendants argue that Relator must identify <u>specific</u> claims presented to the government.  *See* D.E. #67, p. 16.  Defendants argue that it is not sufficient for Relator to rely on Tenet's public filings that generally show revenue derived from Medicare and Medicaid, or Exhibit F attached to the Amended Complaint (D.E. #41-5) which purports to show thousands of sample claims that Tenet presented to Medicaid for reimbursement.[9]  *See id.*, p. 16; Am. Compl. at ¶56.  Defendants maintain that the requisite specificity for each claim must include the precise statements made in the claim, the time and place of such statements, the person responsible for making them, the content of such statements and the manner in which they mislead the government.  *Id.* Defendants argue that Exhibit F is not sufficiently particular because "the exhibit does not identify who at Tenet allegedly submitted a claim for payment, does not state where the claim was submitted, and does not specify what the claim said." D.E. #67, P. 11. Defendants also contend that Exhibit F's sample size is too small to represent "hundreds of physicians under hundreds of leases nationwide." *Id.* Relator counters that the

---

[8] Frequently, the Eleventh Circuit treats together the separate elements of whether a "claim" that is "false or fraudulent" is alleged with specificity.  *See, e.g., Corsello v. Lincare, Inc.*, 428 F.3d 1008 (11th Cir. 2005) ("Because it is the submission of a *fraudulent claim* that gives rise to liability under the False Claims Act, that submission must be pleaded with particularity and not inferred from the circumstances." (emphasis added)).  Since Relator's theory is that the submitted claims are only "false or fraudulent" by virtue of an underlying statutory violation, the Court separates its analysis of the submission of "claims" (discussed in this subsection) from whether such submitted claims are "false or fraudulent" (discussed in the next subsection).  The Amended Complaint does not allege claims that are false or fraudulent in and of themselves.

[9] The Medicare and Medicaid programs are both administered by the Centers for Medicare & Medicaid Services ("CMS"), a federal agency within the U.S. Department of Health and Human Services.  http://www.hhs.gov/about/whatwedo.html.

Eleventh Circuit does not require a complaint to provide details of specific claims submitted to the government where there is "some indicia of reliability" to support the allegation that allegedly false claims were submitted. *See* D.E. #75, p. 11.

The general rule is that a claim must actually be submitted to the government in order for there to be actionable damage. *See United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002). The purpose of this requirement is to ensure that the government has actually – not just likely – been paying claims to the Defendant from the public fisc. *Id.* ("Without the presentment of such a claim, while the practices of an entity that provides services to the Government may be unwise or improper, there is simply no actionable damage to the public fisc as required under the False Claims Act."). In *Clausen*, the pleading defect was "a lack of specific information about the actual submission of claims to the Government." *Id.* It was found that Rule 9(b) does not permit an FCA plaintiff "merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." *Id.* While no specific claims were identified in *Clausen*, the identification of specific claims is only one way to satisfy Rule 9(b)'s requirement, but it is not the only way. *See United States ex rel. Hill v. Morehouse Medical Associates, Inc.*, 82 Fed. Appx. 213, 2003 WL 22019936 (11th Cir. 2003). As the Eleventh Circuit clarified in *Hill*, the identification of specific claims is not necessary where there is a reliable indication that claims were actually submitted. *See United States ex rel. Singh v. Bradford Regional Medical Ctr.*, 2006 U.S. Dist. LEXIS 65268 (W.D. Pa. Sept. 13, 2006) ("the Eleventh Circuit does not construe *Clausen* to require identification of specific claims . . . [t]he panel explained that *Clausen* required that 'some indicia of reliability must be given in the complaint to support the allegation of fraud' to satisfy Rule 9(b)). The analysis of whether there are sufficient indications of reliability that actual claims were submitted is performed on a case by case basis. *See U.S. ex rel Atkins v. McInteer,* 470 F.3d 1350, 1358 (11th Cir. 2006).

Here, Relator alleges that Tenet's public filings show revenues from Medicare and Medicaid. This shows payments from the "public fisc" (here, agencies of the U.S. government) to Tenet. This, in conjunction with Exhibit F, provides a factual basis that is

distinguishable from *Clausen* (where there was no indicia of reliability that actual claims were submitted) as well as three other Eleventh Circuit cases similarly finding insufficient allegations that actual claims were submitted. *Cf. Corsello v. Lincare, Inc.*, 428 F.3d 1008 (11th Cir. 2005) (finding that allegations of numerous schemes, employees, and claims as well as the initials of patients whose Medicare forms were improperly completed did not provide sufficient indicia of reliability that actual claims were submitted); *Atkins,* 470 F.3d at 1359 (finding that the complaint did not provide sufficient indicia of reliability establishing that actual claims were submitted where Atkins summarily concluded that false claims were submitted); *Hopper v. Solvay Pharmaceuticals,* 588 F.3d 1318, 1326 (11th Cir 2009) (finding that the complaint did not provide sufficient indicia of reliability establishing that actual claims were submitted where the existence of an actual false claim was not alleged; rather, it was assumed that an illegal marketing scheme by the Defendants was responsible for causing third parties to submit false claims.). *Clausen*, moreover, indicates that examples of the submission of actual false claims can be legally sufficient even if such examples are not exhaustive. *See Clausen*, 290 F.3d at 314, n. 25 (plaintiffs alleging "prolonged multi-act schemes" must at least allege "some examples of actual false claims to lay a complete foundation for the rest of [its] allegations"). Here, the allegations that Tenet was paid by Medicare and Medicaid together with the specific information provided in Tenet's public filings and Exhibit F do not require the Court to make unwarranted inferences about the submission of claims. Such reliable evidence that actual claims were submitted to the government was not present in *Clausen*, *Corsello*, *Atkins*, or *Hopper*. Relator's allegations in the instant case, therefore, provide sufficient indicia of realiability that actual claims were submitted. Accordingly, the Court finds that Relator has sufficiently alleged that claims were presented to an agent of the United States.

### ii. Does Relator Sufficiently Allege that the Claims are "False"?

The next question is whether Relator has sufficiently alleged that the submitted claims were false. Defendants maintain that Relator has not sufficiently alleged how any claims that Defendants submitted to the government were "false." *See* D.E. #67 at 12. Under Relator's theory of the case, Tenet's claims for reimbursement

under Medicare and Medicaid are deemed false solely because Tenet allegedly violated Stark and AKS. *See* Am. Compl. ¶140-141; *see also* D.E. #75, p. 13 ("the fraudulent conduct at issue does not turn on anything specific to any particular patients' medical treatments. Rather, the fraudulent conduct here relates to the provision of kickbacks (AKS) and entry into financial relationships (Stark) by virtue of Defendants' execution of below-market leases. . . . This conduct taints all claims referred to Defendants from below-market physician tenants and submitted to the government for payment."). Relator therefore urges the Court to focus its particularity analysis regarding the falsity of the submitted claims not on the claims themselves, but on the allegations that Defendants violated Stark and AKS. *See* D.E. #75, p. 9. Relator does not allege in the Amended Complaint that Tenet falsely certified compliance with either Stark or AKS or that certification is a prerequisite of payment. At the hearing held in this Court on June 25, 2012, however, Relator indicated agreement with the United States' position (*see* D.E. #83) that Defendants have certified compliance with both Stark and AKS and that compliance with Stark and AKS is a condition of the government's payments under Medicare and Medicaid. *See also* D.E. #92, p. 2 (Relator asserts that Defendants "did certify compliance" with Stark and AKS.). Defendants, in turn, concede that violations of Stark or AKS deem claims for government payments false under the FCA if the defendant knowingly certified compliance with the statute and the certification was a prerequisite of payment. *See* D.E. #67, p. 18. In view of Relator's representation at the hearing held in this Court on June 25, 2012, the Court grants Relator, in accordance with its request, leave to amend its Amended Complaint to include such allegations of certified compliance. Accordingly, the Court need not reach the question of whether a mere violation of either Stark or AKS – in the absence of a certification of compliance – would be enough to deem claims for government payments false.[10]

---

[10] While the Court does not reach this question, the Court observes that the Eleventh Circuit appears to have recognized that a mere violation of AKS is legally sufficient to deem claims false under the FCA. The Eleventh Circuit stated that "[t]he violation of the regulations and the corresponding submission of claims for which payment is known by the claimant not to be owed makes the claims false under section[] 3729(a)(1). *See McNutt ex rel. United States v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1259 (11th Cir. 2005). In *McNutt*, however, there were also differences from the instant case, including specific claims and a false certification. While not applicable to the instant

Relator, in any event, will still be required to plead facts with particularity showing a violation of Stark and/or AKS in order to show that a certification of compliance with Stark and/or AKS is false.

Stark has three prima facie elements: (1) a "financial relationship" between a physician and a medical entity (such as a Tenet hospital);[11] (2) a referral from such physician to the medical entity for designated health services; and (3) a claim presented or caused to be presented by such medical entity to an individual, third party payor, or other entity for designated health services furnished pursuant to a referral under subparagraph (A). *See* 42 U.S.C. §1395nn(a)(1).

Here, Relator has adequately alleged the second and third elements, but Relator has failed to adequately allege a prohibited financial relationship. A prohibited financial relationship means "an ownership or investment interest in the entity" or "a compensation arrangement . . . between the physician (or an immediate family member of such physician) and the entity."  42 U.S.C. §1395nn(a)(2). Relator claims that the prohibited financial relationship in the instant case derives from a prohibited "compensation arrangement."  "Compensation arrangement" is defined to mean "any arrangement involving any remuneration between a physician (or an immediate family member of such physician) and an entity."  42 U.S.C. § 1395nn(h)(1)(A). "Remuneration," in turn, is defined to "include[] any remuneration, directly or indirectly, overtly or covertly, in cash or in kind." 42 U.S.C. §1395nn(h)(1)(B).  The Oxford English Dictionary defines the lower-case term "remuneration" as "money paid for work or a service."

---

case, the Patient Protection and Affordable Care Act of 2010 reinforces the view that a mere violation of AKS is legally sufficient to deem claims false under the FCA.  *See* 42 U.S.C. §1320a-7b(g) ("a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim.").

[11] This element is subject to numerous exceptions that may be raised by Defendants as affirmative defenses.  *See United States ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr.*, 2012 U.S. Dist. LEXIS 36304 (M.D. Fla. Mar. 19, 2012) ("while the Stark Amendment sets forth these exceptions, nothing in its language requires that the applicability of such exceptions be denied in the initial pleadings. And the Defendants have not cited to any cases imposing such a requirement. Rather, these exceptions would appear to be affirmative defenses that must be raised by the Defendants.").

Here, the allegations of remuneration, while detailed, do not provide the Court with sufficient information to permit it to draw the reasonable inference that Defendants are paying their physician-tenants for work or a service (i.e., to induce referrals). Relator's theory is that Defendants are paying physicians for referrals in the form of below-fair-market-value rent. In other words, the difference between fair market value rent and the rent actually charged to the referring physicians allegedly represents an indirect payment from Defendants to such physicians – a form of remuneration. While there is no direct guidance in the 11th Circuit for how to plead a below-fair-market-value exchange, the Court finds that such allegations must be pled with particularity. *See United States ex rel. Obert-Hong v. Advocate Health Care*, 211 F. Supp. 2d 1045, 1049 (N.D. Ill. 2002) (finding that relator failed to allege particularized allegations that an acquisition transaction was not at fair market value). To do so, Relator must allege a benchmark of fair market value against which Defendants' rents to physician-tenants can be tested. Without alleging a benchmark of fair market value, it is impossible for the Court to infer whether Defendants' rents to physician-tenants fall sufficiently below the benchmark so as to constitute remuneration. Relator must then allege some particular examples of rent being charged to its physician-tenants in a comparable unit during the same market that can be contrasted against the alleged benchmark. *See United States ex rel. Goodstein v. McLaren Reg'l Med. Ctr.*, 202 F. Supp. 2d 671 (E.D. Mich. 2002) (citing a market rent study showing that fair market value differs in different time periods). Such a benchmark must also be provided with respect to the market measurements against which the original leases should have allegedly conformed and the other allegedly compensating perks, such as tenant improvement allowances. In the latter case, Relator fails to show the market standard for tenant improvement allowances, which would be necessary in order to determine whether Defendants' tenant improvement allowances were excessive or at the market. Relator may seek to address these deficiencies in an amended complaint.

AKS has three elements that are pertinent to the instant case. Under AKS, it is illegal to (1) knowingly and willfully (2) offer or pay any remuneration (3) to induce such person to refer an individual to a person for the furnishing or arranging . . . of any

14

item or service for which payment may be made in whole or in part under a Federal health care program. *See* 42 U.S.C. § 1320a-7b(b)(2).

Here, the same pleading problems regarding "remuneration" described in the preceding section equally apply. In addition, Relator fails to adequately allege inducement.

AKS does not define "induce," but according to Black's Law Dictionary, it means, among other things, to influence an act or course of conduct." Black's Law Dictionary 697 (6th ed. 1990). In the context of AKS, it functions as a nexus to ensure Relator includes allegations that the use of remuneration influences the direction of referrals. A Relator must demonstrate "an intent to exercise influence over the reason or judgment of another in an effort to cause the referral of program related business." *Hanlester Network v. Shalala*, 51 F.3d 1390, 1398 (9th Cir. 1995). Setting aside intent, the instant case involves no allegations that any particular physicians were induced to alter their referral decisions on account of their financial relationship with the Defendants. Relator only alleges in a conclusory fashion that Defendants' "remuneration was . . .intended to induce or reward referrals, in violation of the Anti-Kickback Statute." Am. Compl. ¶1; *see also* ¶141. There are no factual allegations suggesting any *quid pro quo* of below-fair-market-values leases in exchange for referrals. Neither are there any allegations that any physician-tenants felt pressure to refer patients to Defendants instead of other medical entities on account of their favorable rent nor allegations that insufficient referral numbers to Defendants would cause or were feared to cause rental rate penalties in future lease renewals. Since no facts suggest that any physician-tenants were induced by their rent to make referrals based on continued remuneration rather than concern for the health and well-being of each physician's patient, the Court has no basis upon which to reasonably infer that any alleged remuneration clouded the independent judgment of any physician-tenant. This contrasts with the facts of the two cases cited by Relator on this issue. *Cf. United States v. Kats*, 871 F.2d 105, 106 (9th Cir. Cal. 1989) (owner of medical lab agreed to kick back 50 percent of the Medicare payments received by the lab as a consequence of referrals from a medical services company); *United States v. Greber*, 760 F.2d 68 (3d Cir. Pa. 1985) (diagnostic services company billed Medicare

15

for its service and paid 40% of the payment to the referring physician). Relator may seek to address this deficiency in an amended complaint.

Last, Relator must allege that offers or payments of remuneration to induce illegal referrals were done knowingly and willfully. To plead this element, Relator must allege that Defendants acted "with knowledge that [their] conduct was unlawful." *United States v. Starks*, 157 F.3d 833, 838 (11th Cir.1998). Relator has alleged that Tenet has a long-history of paying fines, civil damages, and other penalties on account of past kickbacks and self-referrals under both AKS and Stark. *See* D.E. #41, ¶¶20-26. This permits the Court to reasonably infer that Defendants have actual knowledge of the requirements of both statutes. Furthermore, although not alleged in the Amended Complaint, Relator has asserted that "Defedants' many certifications will be relevant to proof of knowledge under the FCA." D.E. #92, p. 3, FN 1. Relator may include allegations that Defendants certified compliance with AKS and Stark to support their allegations of knowledge in an amended complaint. If Relator can properly allege facts of remuneration and inducement under AKS, Relator's allegations that such remuneration was intended to induce or reward referrals (*see id.* at ¶¶1 and 122) would be sufficient to plead a violation of AKS.

> *iii. Does Relator Adequately Allege that Defendants' "Knowingly" Presented a False Claim?*

The next issue is whether Relator adequately alleged that Defendants' "knowingly" presented a false claim. The term "knowingly" under the FCA means that a person "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1). The statute is clear that this term requires "no proof of specific intent to defraud." *Id.* However, a plaintiff cannot simply allege the legal elements of a claim and survive a motion to dismiss. *See Iqbal*, 129 S. Ct. at 1949-1950 ("that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.").

As described in the previous sub-section, Relator has sufficiently alleged that Defendants have actual knowledge of the requirements of AKS and Stark. To the extent Relator can properly plead violations of AKS and/or Stark in its amended complaint together with Defendants' certifications of compliance with AKS and Stark, such allegations would suggest knowledge of a false certification under the FCA. Such allegations would therefore be sufficient to satisfy the knowledge requirement under the FCA.

### iv.  Does Relator Adequately Allege "Conspiracy"?

The final issue is whether Relator has adequately alleged a conspiracy claim. To state a claim for conspiracy under 31 U.S.C. § 3729(a)(1)(C), a relator must allege that: (1) the defendant conspired with others to get a false claim paid by the government, (2) the conspirators performed an act "to effect the object of the conspiracy," and (3) the government suffered damages as a result of the false claim. *See, e.g., Corsello*, 428 F.3d at 1014. All of this must be pled with particularity under the heightened pleading requirements of Rule 9(b). *See id.* Here, at a minimum, Relator has not alleged that Defendants entered into an agreement to conspire or identified who was conspiring with Defendants. Moreover, Relator has failed to respond to this part of Defendants' motion in its Response. *See generally*, D.E. #75. The failure to defend a claim in responding to a motion to dismiss results in the abandonment of that claim. *See, e.g., Hooper v. City of Montgomery*, 482 F. Supp. 2d 1330, 1334 (M.D. Ala. 2007); *see also Edmondson v. Bd. of Trs. Of Univ. of Ala.*, 258 Fed. App'x. 250, 253 (11th Cir. 2007). Accordingly, the Amended Complaint fails to adequately allege a conspiracy claim.

C. **Conclusion**

For the reasons stated above, Defendants' Motion to Dismiss is DENIED with respect to lack of subject matter jurisdiction and GRANTED with leave to amend with respect to failure to state a claim upon which relief can be granted. If Relator seeks to amend his Amended Complaint, Relator must file such Second Amended Complaint with this Court on or before August 1, 2012.

DONE AND ORDERED in Chambers, Miami, Florida, July 12, 2012.

_____
Paul C. Huck
United States District Judge

<u>Copies furnished to</u>:
All counsel of record