## CIVIL SETTLEMENT AGREEMENT (Redacted)

### I. PARTIES

This Settlement Agreement ("Agreement") is entered into between the following (hereinafter "the Parties") through their authorized representatives:

(a) the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS"); the TRICARE Management Activity ("TMA") (formerly the Office of Civilian Health and Medical Program of the Uniformed Services ("OCHAMPUS")), through its General Counsel; and the Office of Personnel Management ("OPM"), which administers the Federal Employees Health Benefit Program ("FEHBP") (collectively, "the United States"); and,

(b) Tenet Healthcare Corporation, on behalf of its predecessors, and current and former affiliates, divisions, and direct and indirect subsidiaries ("Tenet"); Tenet HealthSystem HealthCorp.; Tenet HealthSystem Holdings, Inc.; Tenet HealthSystem Medical, Inc.; OrNda Hospital Corp.; and the 165 hospitals listed in Exhibit 1 hereto (referred to herein as the "Settling Hospitals") (collectively the "Tenet Entities").

### II. PREAMBLE

As a preamble to this Agreement, the Parties agree to the following:

A.  Tenet is a Nevada corporation with headquarters in Dallas, Texas. Tenet, through its predecessors, subsidiaries, and/or affiliates, operates or has operated the Settling Hospitals during some or all of the time period January 1, 1990 to the present.

B.  The United States has filed three actions against certain Tenet Entities in the Central District of California (collectively the "DRG Complaints"), captioned as follows:

(1)  U.S. v. Tenet Healthcare *et al.*, CV03-206 GAF

(2)  U.S. v. Tenet Healthcare *et al.*, CV04-857 GAF

(3)  U.S. v. Tenet Healthcare *et al.*, CV04-859 GAF

The DRG Complaints allege that these Tenet Entities engaged in "upcoding" as further described in Paragraph II.E(2) below.

C.  ████████████████████████████████████████
████████████████████████████████

D.  The Tenet Entities submitted or caused to be submitted claims for payment to the Medicare Program ("Medicare"), Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395ggg (1997); the Medicaid Program ("Medicaid"), 42 U.S.C. §§ 1396-1396v; the TRICARE Program ("TRICARE"), 10 U.S.C. §§ 1071-1107; and the FEHBP, 5 U.S.C. §§ 8901 et. seq. (collectively the "Government Health Care Programs").

E.  The United States alleges that it has certain civil claims against the Tenet Entities, as specified in Paragraph III.4 below, for engaging in the following conduct (hereinafter the "Covered Conduct"):

(1) **Outlier Payments:**

From October 1, 1995 through August 7, 2003, the Tenet Entities allegedly submitted or caused to be submitted claims to the Government Health Care Programs for inpatient and outpatient outlier payments that the Tenet Entities were not entitled to receive because (a) the Tenet Entities allegedly had ==artificially and purposely inflated the charges billed== for inpatient and outpatient care ==substantially in excess of== any increase in the costs associated with that care, (b) as a result, the Tenet Entities allegedly improperly received outlier payments that were ==further inflated because they were computed pursuant to statewide average cost-to-charge ratios== that should not properly have applied, and (c) the Tenet Entities allegedly ==billed for inpatient and outpatient services and supplies not provided to patients.== ████████
████████████████████████████████████████████████

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ As a result of these artificially inflated and allegedly false claims, the Tenet Entities allegedly caused the Government Health Care Programs to pay to Tenet money that lawfully belonged to the United States in that it exceeded the amount Tenet would have received had these claims not been artificially inflated and false.

    (2)    **DRG Upcoding:**

    (a) From January 1, 1992 through December 31, 1998, Tenet and the Settling Hospitals listed in Exhibit 2 allegedly submitted or caused to be submitted claims to Medicare that assigned diagnosis codes for inpatient discharges that were not supported by physician documentation in the patient's medical records or were otherwise improper for the following diagnosis related groups ("DRG's"): 79, 106, 124, 415, 416, 475 and 483; and,

    (b) Between January 1, 1992 and December 31, 1998, Tenet annually certified compliance with its obligations under its Corporate Integrity Agreement notwithstanding its alleged knowledge of claims of the type described above.

    (3)    **Physician Relationships:**

    From January 1, 1992 through October 12, 2005, the Tenet Entities allegedly submitted or caused to be submitted claims to Medicare for items and services delivered by those Tenet Entities that were ordered by a physician, a member of a physician group practice, a professional corporation, or other legal entity owned at least in part by a physician with whom the Tenet Entities had a financial relationship, directly or through a family member. The United States alleges these claims were false because (a) Section 1877 of the Social Security Act ("SSA"), 42 U.S.C. § 1395nn (also known as the Stark Law) prohibited the Tenet Entities from billing Medicare for items or services referred or ordered by physicians with whom the Tenet

3

Entities had improper financial relationships, (b) the Tenet Entities forfeited the right to bill Medicare for such items and services by allegedly paying remuneration to physicians intending that remuneration to induce those and other referrals in violation of the Anti-kickback Statute, 42 U.S.C. § 1320a-7b(b), and (c) the Tenet Entities were required to and did certify on cost reports submitted to fiscal intermediaries for the applicable fiscal years that items and services identified or summarized in each cost report were not provided or procured through the payment directly or indirectly of a kickback or billed in violation of federal or state referral laws (*e.g.*, the Stark Law). ▮

▮

(4)     **Tiered Charges**:

From January 1, 1996 through September 30, 2005, Tenet and the Settling Hospitals listed in Exhibit 3 allegedly submitted or caused to be submitted claims to Medicare that used higher charges for inpatient than outpatient services, when those charges were required to be uniform. ▮

(5)     **Centinela Hospital Medical Center Claims**:

From January 1, 1999 through December 31, 2005, Centinela Hospital Medical Center allegedly submitted or caused to be submitted claims to Medicare for cardiac catheterizations that were not medically necessary.

(6)     **Desert Regional Medical Center Claims**:

(a) From January 1, 1997 through May 31, 2004, Tenet and Desert Regional Medical Center allegedly submitted or caused to be submitted claims to Medicare for outpatient

4

care rendered at the Comprehensive Cancer Center (i) with the following billing codes that were inaccurate and resulted in excessive reimbursement: modifiers 25, 27, and 59, and diagnostic codes related to screening and diagnostic mammograms, and (ii) for diagnostic laboratory and imaging services that were not supported by appropriate documentation. ▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ and

(b) From January 1, 1997 through May 31, 2001, Tenet and Desert Regional Medical Center allegedly submitted or caused to be submitted cost reports to Government Health Care Programs that sought reimbursement for excessive management fees paid to the Comprehensive Cancer Center.

(7)  **Brookwood Medical Center Claims**:

From January 1, 1997 through May 1, 2000, Brookwood Medical Center submitted claims to Government Health Care Programs for reimbursement for (i) units of blood that allegedly were not administered and (ii) blood filters that allegedly were not used. ▉▉▉
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
▉▉▉▉

(8)  **People's Health Network Claims:**

From January 1, 1999 through August 23, 2005, People's Health Network ("PHN"), an entity in which Tenet had an ownership interest, allegedly failed to provide services and provided services not consistent with the standard of care required under applicable regulations and statutes to patients that were included in the capitated rate paid by Medicare to PHN.

F.  The United States also contends that it has certain administrative claims against

5

the Tenet Entities for the Covered Conduct under the provisions for permissive exclusion from Medicare, Medicaid and other Federal health care programs, 42 U.S.C. § 1320a-7(b), the provisions for permissive exclusion from TRICARE, 32 C.F.R. § 199.9, and the provisions for civil monetary penalties, 42 U.S.C. § 1320a-7a.

G.  The Tenet Entities deny the contentions of the United States set out in Paragraphs II.E and II.F above.

H.  To avoid the delay, uncertainty, inconvenience and expense of protracted litigation of these claims, the Parties reach a full and final settlement as set forth in this Agreement. The settlement amount required to be paid by the Tenet Entities pursuant to this Agreement reflects limitations on the Tenet Entities' ability to pay occasioned by the financial condition of the Tenet Entities.

### III.  TERMS AND CONDITIONS

NOW, THEREFORE, in consideration of the mutual promises, covenants, and obligations set forth below, and for good and valuable consideration as stated herein, the Parties agree as follows:

1.  The Tenet Entities agree to pay to the United States a total of $900 million, plus applicable interest, as follows (the "Settlement Amount"):

(a) The Tenet Entities agree to pay the United States $450 million, plus interest accruing at a simple rate of 4.125% from November 1, 2005, within ten (10) days after the Effective Date of this Agreement. The payment shall be made by electronic funds transfer pursuant to written instructions to be provided by Michael F. Hertz, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice.

(b) The Tenet Entities agree to waive, and not assert any claim for, additional

6

Disproportionate Share Hospital ("DSH") program payments related to Medicaid eligible patient days and SSI patient days to which the Tenet Entities may be entitled for all cost reporting periods beginning on or before December 31, 2001, which claims and potential claims have a value of $50 million.

(c) The Tenet Entities agree to waive, and not assert any claim for, any additional outlier payments from any Government Health Care Program to which the Tenet Entities may be entitled for any period prior to August 7, 2003, which claims and potential claims have a value of $125 million.

(d) The Tenet Entities further agree to pay the United States $275 million, plus interest accruing at a simple rate of 4.125% from November 1, 2005, in quarterly installments from November 1, 2007 through August 1, 2010 in accordance with the schedule of payments attached as Exhibit 4. All quarterly payments shall be made by electronic funds transfer pursuant to written instructions to be provided by Michael F. Hertz, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice.

2. The principal portion of the Settlement Amount is attributable to the Covered Conduct as follows (with interest to be allocated on the same pro rata basis):

(a) Outlier Payments: $788,851,228



(b) DRG Upcoding: $46,886,882

(c) Physician Relationships: $47,533,514

████████

(d) Tiered Charges: $822,577 ████████

████████

(e) Desert Regional Medical Center Claims: $452,417 ████

████████

(f) Brookwood Medical Center Claims: $30,065 ████

████████

(g) People's Health Network Claims: $15,423,316

3.  If the Tenet Entities fail to make any of the payments described in Paragraph III.1 above at the specified time, upon written notice to the Tenet Entities of this default, the Tenet Entities shall have ten (10) calendar days to cure the default. If the default is not cured within the ten-day period: (a) the remaining unpaid principal portion of the Settlement Amount shall become accelerated and immediately due and payable, with interest at a simple rate of 4.125% from November 1, 2005 to the date of default, and at a simple rate of 9.5% per annum from the date of default until the date of payment; (b) the United States may pursue any and all actions for collection as it may choose, including, without limitation, filing an action for specific performance of this Agreement; and (c) the United States may offset the remaining unpaid balance of the Settlement Amount (inclusive of interest) from any amounts due and owing to any of the Released Tenet Entities (defined in Paragraph III.4 below) by any department, agency, or

## EXHIBIT 4: PAYMENT SCHEDULE

| Date | Outstanding Amount | Principal Payments | Interest | Interest Payments | Total Payment |
|---|---|---|---|---|---|
| 11/1/2005 | $ 725,000,000 | | | | |
| 11/30/2005 | | | $ 2,376,113 | | |
| 12/31/2005 | | | $ 2,539,983 | | |
| 1/31/2006 | | | $ 2,539,983 | | |
| 2/28/2006 | | | $ 2,294,178 | | |
| 3/31/2006 | | | $ 2,539,983 | | |
| 4/30/2006 | | | $ 2,458,048 | | |
| 5/31/2006 | | | $ 2,539,983 | | |
| 6/30/2006 | $ 275,000,000 | $ 450,000,000 | $ 2,458,048 | $ 19,746,318 | $ 469,746,318 |
| 7/31/2006 | | | $ 963,442 | | |
| 8/31/2006 | | | $ 963,442 | | |
| 9/30/2006 | | | $ 932,363 | | |
| 10/31/2006 | | | $ 963,442 | | |
| 11/30/2006 | | | $ 932,363 | | |
| 12/31/2006 | | | $ 963,442 | | |
| 1/31/2007 | | | $ 963,442 | | |
| 2/28/2007 | | | $ 870,205 | | |
| 3/31/2007 | | | $ 963,442 | | |
| 4/30/2007 | | | $ 932,363 | | |
| 5/31/2007 | | | $ 963,442 | | |
| 6/30/2007 | | | $ 932,363 | | |
| 7/31/2007 | | | $ 963,442 | | |
| 8/31/2007 | | | $ 963,442 | | |
| 9/30/2007 | | | $ 932,363 | | |
| 11/1/2007 | $ 15,197,517 | | $ 994,521 | | |
| 11/1/2007 | $ 275,000,000 | $ 24,231,795.52 | | | $ 39,429,313 |
| | $ 250,768,204 | | | | |
| 2/1/2008 | $ 229,122,456 | $ 21,645,748.41 | | 2,586,047.11 | $ 24,231,796 |
| 5/1/2008 | $ 207,253,486 | $ 21,868,970.19 | | 2,362,825.33 | $ 24,231,796 |
| 8/1/2008 | $ 185,158,992 | $ 22,094,493.95 | | 2,137,301.57 | $ 24,231,796 |
| 11/1/2008 | $ 162,836,649 | $ 22,322,343.42 | | 1,909,452.10 | $ 24,231,796 |
| 2/1/2009 | $ 140,284,106 | $ 22,552,542.58 | | 1,679,252.94 | $ 24,231,796 |
| 5/1/2009 | $ 117,498,990 | $ 22,785,115.68 | | 1,446,679.84 | $ 24,231,796 |
| 8/1/2009 | $ 94,478,903 | $ 23,020,087.18 | | 1,211,708.34 | $ 24,231,796 |
| 11/1/2009 | $ 71,221,421 | $ 23,257,481.83 | | 974,313.69 | $ 24,231,796 |
| 2/1/2010 | $ 47,724,097 | $ 23,497,324.61 | | 734,470.91 | $ 24,231,796 |
| 5/1/2010 | $ 23,984,456 | $ 23,739,640.77 | | 492,154.75 | $ 24,231,796 |
| 8/1/2010 | | $ 23,984,455.82 | | 247,339.70 | $ 24,231,796 |